IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Delawrence Ashford, #299544, ) | |
| ) | |
| ) | Civil Action No. 8:05-529-MBS-BHH |
| Plaintiff, ) | |
| ) | |
| ) | **REPORT OF MAGISTRATE** |
| ) | **JUDGE** |
| vs. ) | |
| ) | |
| Alvin S. Glenn Detention Center; and ) | |
| Prison Health Services Incorporated, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the Defendant Prison Health Services Incorporated's ("PHS") motion to dismiss and for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on February 18, 2005, seeking damages against the defendants for injury caused by an allegedly defective basketball hoop and deliberate indifference to such injury. On May 26, 2005, PHS moved for dismissal and summary judgment. By order filed May 27, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On July 5,

2005, the plaintiff filed a brief affidavit in response as well as various medical and prison records.

## **FACTS PRESENTED**

Defendant, Prison Health Services, Inc. ("PHS"), is a private corporation. Pursuant to a contract agreement, PHS provides medical services to inmates of the Alvin S. Glenn Detention Center in Richland County, South Carolina (the "detention center"). (Mem. Supp. Summ. J. at 1.) PHS employs nurses, paramedics, social workers, and other staff who offer medical and mental health services to inmates of the detention center. *Id*. According to plaintiff's records he was an inmate at the detention center beginning on or around January 13, 2002 until his discharge on April 13, 2002. He was detained again at the detention center later that year from December 5, 2002 through February 3, 2003.

The facts surrounding plaintiff's claims are provided here as alleged in plaintiff's Complaint. The plaintiff's allegations stem from an incident at the detention center during recreation. The plaintiff states that on February 18, 2002 he was playing basketball with other inmates. According to the Complaint, he "was standing underneath the material (backboard, pole, and rim) . . . . As the ball hit the rim, it caused all of the equipment to separate from the wall connection . . . . The goal, backboard, and pole that is welded to the wall came down as a complete structure intact" and struck him on his head and neck. *(See* Complaint.) The plaintiff alleges that he lost consciousness, had pain in his neck and back, and suffered a head contusion.

The plaintiff states that he was transported to Palmetto Richland Memorial Hospital by ambulance and was guarded at the hospital by a detention center officer and a PHS paramedic. According to the plaintiff, the paramedic told someone at the hospital that "a basketball hoop" struck his head. The plaintiff alleges that this statement is incomplete and that the misinformation interfered with his ability to get complete medical care from the hospital.

2

The plaintiff also alleges that PHS did not examine him on the date of the incident and falsified records of an evaluation and of the events surrounding the incident. The plaintiff further alleges that PHS failed to timely and properly remove the staple from his forehead leaving a scar. The Complaint also states that the plaintiff filed grievances with PHS that were not addressed and that he was not determined to be "special needs" until April 9, 2002 when he "was finally examined by the physician at PHS."

## **LAW AND ANAYLSIS**

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the

movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

Although the plaintiff has not specified his various claims, he has essentially alleged three separate causes of action: (1) a negligence claim against the detention center for the construction and condition of the basketball structure that fell on him;[1] (2) a medical malpractice claim against PHS; and (3) and a deliberate indifference claim under 42 U.S.C. § 1983. Because the Court recommends dismissal of the Section 1983 claim, it will decline to exercise supplemental jurisdiction and consider the state law negligence claims.

### I.    SECTION 1983 CLAIM AGAINST PHS

As an initial matter, PHS contends that the Section 1983 claim should be dismissed because the medical department of a detention center is not a person within the meaning of Section 1983.[2] While this rule is well settled, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir.1973), "where a *pro se* litigant alleges a cause of action which *may be meritorious against persons unknown*, the

---

[1] It does not appear that the plaintiff has pled a Section 1983 claim against the detention center. To the extent he intended to do so, he has not pled sufficient facts, even if true, to support such a claim. *See* Fed. R. Civ. P. 12(b)(6). To the extent the plaintiff contends the detention center was deliberately indifferent in its failure to respond to his requests for treatment at PHS, the record indicates that the detention center did allow him to receive treatment at PHS. (*See* Pl.'s Resp. Summ. J. at 1, 9, 13.)

[2] The detention center also does not qualify as a person for purposes of 1983.

district court should afford him a reasonable opportunity to determine the correct person or persons against whom the claim is asserted, advise him how to proceed, and direct or permit amendment of the pleadings to bring that person or persons before the court." *Harden v. Green*, 27 Fed. Appx. 173 (4th Cir. 2001) (emphasis added) *(citing Gordon v. Leeke*, 574 F.2d 1147, 1152-53 (4th Cir.1978); *see also Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir.1965) (pro se plaintiff should be given an opportunity to particularize a potentially viable claim)). The plaintiff, in this case, has not named an individual defendant. The Court, however, concludes that he has also not alleged a potentially meritorious claim. The Court, therefore, declines to grant the plaintiff leave to amend his Complaint because naming a specific individual would not cure his legal case, which is without merit against PHS.

Next PHS contends that it cannot be liable under Section 1983 because it is a private corporation and not acting under color of state law as required. *See West v. Atkins*, 487 U.S. 42 (1988). PHS relies heavily on the Supreme Court's decision in *West* to argue that it is not subject to a Section 1983 claim. The Fourth Circuit, however, in *Conner v. Donnelly*, 42 F.3d 220 C.A.4 (Va.),1994, discussing *West*, made clear that any person providing medical services to an inmate at the request of the prison, does so under color of state law, whether a private corporation or not, and is, therefore, subject to a Section 1983 claim. The court stated:

> The provision of medical services to prison inmates is the state's exclusive prerogative for the same reason it is its constitutional duty: a prisoner has no alternative means of acquiring medical care other than those provided by the state. To fulfill its constitutional obligation, a state employs its own physicians or pays private physicians to treat its prisoners. See *West*, 487 U.S. at 55, 108 S.Ct. at 2258-59. In either case, the state relies on the independent professional judgment of the physicians it has authorized to treat its prisoners. *Id*. If a physician treating a prisoner--whether by contract or by referral--misuses his power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law. The source of the deprivation does not change because the physician has no contractual relationship with the state: the

5

> physician acts under color of state law because the state has incarcerated the prisoner and denied him the possibility of obtaining adequate medical care on his own.

*Id.*

Accordingly, PHS acted under color of state law when it treated the plaintiff, notwithstanding the fact that it is a private corporation and exercised its own independent medical judgment. The state had a constitutional duty to provide adequate medical care to the plaintiff. *See id.* In furtherance of its constitutional obligation, the detention center has contracted with PHS to provide medical services to inmates of the Alvin S. Glenn Detention Center. (Mem. Supp. Summ. J. at 1.) Morever, the detention center, in this case, referred the plaintiff to PHS and presumably paid PHS for the services rendered to the plaintiff. PHS had the state's authorization to treat the plaintiff and, furthermore, could treat the plaintiff only because it was so authorized by the state. *See id.; see also Conner*, 42 F.3d at 225. In treating the plaintiff, PHS exercised power that is traditionally the exclusive prerogative of the state. *See id.* If PHS, as the plaintiff has alleged, abused its power by demonstrating deliberate indifference to the plaintiff's serious medical needs, the plaintiff has suffered a deprivation under color of state law because the State of South Carolina has incarcerated Conner and had denied him the opportunity of obtaining medical care from anywhere other than PHS. *See id.*

Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove that there has been deliberate indifference to their serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The test for deliberate indifference has two parts: first, whether the deprivation of medical care was sufficiently serious (objective component) and second, whether there existed a culpable state of mind (subjective component). *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

The first issue (the objective element) is whether the plaintiff was deprived of a serious medical need. That component can be further broken down into two elements: (1)

a serious medical need and (2) mistreatment or nontreatment of that need. There is no clear definition of what constitutes a serious medical need. However, the Eighth Amendment embraces the treatment of medical conditions which may cause future health problems. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993). Further, a medical need is serious if it is one that has been diagnosed by a physician or is so obvious that even a layperson would recognize the need for a doctor's treatment. See *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980). The objective element also requires the plaintiff to prove that his serious medical need was not timely or properly treated.

The second element (the subjective component) requires a showing that the defendant's actions were wanton. The standard for wantonness depends upon the circumstance of the case. *Wilson*, 501 U.S. at 302-03. Deliberate indifference requires, at a minimum, that the defendant thought about the matter and chose to ignore it. It may appear when prison officials deny, delay, or intentionally interfere with medical treatment. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir.1997).[3]

As to the objective component of his claim, the Court finds that the plaintiff suffered a serious injury. The plaintiff, however, has not produced evidence to create a genuine issue of fact as to whether PHS failed to provide him medical treatment. The only inference to be drawn from the medical records is that the plaintiff was consistently and adequately evaluated and treated by the medical staff and physicians of PHS. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851-852 (4th Cir.1990).

---

[3] It is immaterial whether or not the plaintiff was a pretrial detainee at the time of the incident, because the same analysis applies. *See Martin v. Gentile*, 849 F.2d 863, 870-71 (4th Cir. 1988).

7

The medical records produced by the plaintiff show that he received treatment from PHS and was not otherwise mistreated. (*See generally* Resp. Mot. Summ. J. Attachment 1.) Those records show that plaintiff was provided emergency medical care on February 18, 2002 and that he was provided follow-up care for his back pain until his discharge. (*See generally* Resp. Mot. Summ. J. Attachment 1.)

The plaintiff alleges that he was not evaluated or seen by PHS on February 18, 2002, the date of the incident. The records reflect differently. *Id*. at 1, 4, 9. Detailed notes indicate that the plaintiff was evaluated fully and his vital signs were taken at the scene of the incident. *Id*. at 2. Additionally, plaintiff was bleeding and a dressing was applied. *Id*. The plaintiff was transported by ambulance to Palmetto Richland Memorial Hospital. (*See* Complaint.) The records also indicate that on transfer the plaintiff's neck was immobilized and in full spinal precautions. (*See* Pl.'s Resp. Mot. Summ. J. Attachment 1 at 2.) The plaintiff was discharged back to the detention center from the emergency department the same day with a diagnosis of "contusion to head/closed head injury." He received one staple to his forehead and was not prescribed medication. (*Id.*)

The plaintiff also alleges that a physician did not see him until April 9, 2002, when he was determined to be "special needs." In fact, he was seen on multiple occasions prior to that date. (*Id*. at 1, 4, 9, 13.)

Finally, the plaintiff complains that the PHS paramedic gave the hospital incorrect information about the incident. The Court finds this claim frivolous. The records show that it was reported to the treating physicians that a basketball goal had fallen on the plaintiff. Such a description is sufficiently consistent with the plaintiff's own representations. The plaintiff himself was free to expound upon the circumstances if he believed that more information was necessary.

Accordingly, the plaintiff cannot establish the objective element of his claim that PHS mistreated or failed to treat a serious injury. Even assuming *arguendo* that the plaintiff was

able to make such a showing, his Section 1983 claim fails because there is no evidence to suggest that PHS's actions were wanton. *Wilson*, 501 U.S. at 302-03. "Deliberate indifference requires, at a minimum, that the defendant thought about the matter and chose to ignore it." *Id.* It cannot be genuinely argued that PHS ignored the plaintiff's injury. The plaintiff's own exhibits show otherwise. The plaintiff's mere disapproval of the treatment he received is immaterial. To the extent a plaintiff "disagree[s] with the course of treatment prescribed by prison medical personnel, such claims are not actionable under §1983." *Stauch v. S.C. Dept. of Corrections*, 1996 WL 705239, (4th Cir. December 9, 1996); *see also Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975) (finding that "questions of medical judgment are not subject to judicial review").

The remainder of the plaintiff's claims, including but not limited to the removal of the staple in his head, are baseless accusations that lack evidentiary support or amount to nothing more than allegations of medical malpractice, at best. Federal courts have consistently held that medical malpractice or negligence does not rise to the level of a constitutional violation simply because the victim is a prisoner. *See Estelle* at 106; *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Wilson v. Seiter*, 501 U.S. 294,297 (1991) ("allegations of 'inadvertent failure to provide adequate medical care', or of a 'negligent diagnosis', simply fail to establish the requisite culpable state of mind"). In *Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999), the Fourth Circuit Court of Appeals stated "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . the Constitution is designed to deal with the deprivation of rights, not errors in judgment . . . . This is precisely why the Supreme Court has seen fit to stress that deliberate indifference requires more than ordinary lack of due care for the prisoner's interests or safety." *Id*.

Therefore, the plaintiff has failed to establish a claim for deliberate indifference against PHS and PHS is entitled to summary judgment as a matter of law.

### B. State Law Claims

Having dismissed the plaintiff's federal claim against PHS, the court declines to exercise jurisdiction over whatever state law claims the plaintiff may have against either of the defendants. *See* 28 U.S.C. § 1367(c); *see, e.g., Patterson v. City of Columbia*, 2003 WL 23901761, at *5 (D.S.C. Dec 29, 2003) ("Patterson has raised various state law claims against all Defendants. Because the federal claims must be dismissed, the court declines to exercise jurisdiction over the remaining state law claims.") Thus, the state law claims, if any, are dismissed without prejudice for refiling in state court.

### **CONCLUSION**

Wherefore, it is RECOMMENDED that Prison Health Services Incorporated's Motion for Summary Judgment be GRANTED and the plaintiff's federal claims against Prison Health Services Incorporated be DISMISSED with prejudice. It is further RECOMMENDED that the plaintiff's state law claims, of whatever kind, against either defendant be DISMISSED without prejudice.

IT IS SO ORDERED AND RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

January 23, 2006
Greenville, South Carolina